IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

SHAIDON BLAKE,

    **Plaintiff,**

    v.                            CASE NO. 21-3047-SAC

JEFF ZMUDA, et al.,

    **Defendants.**

**MEMORANDUM AND ORDER
AND ORDER TO SHOW CAUSE**

Plaintiff Shaidon Blake is hereby required to show good cause, in writing, to the Honorable Sam A. Crow, United States District Judge, why his Amended Complaint should not be dismissed.

**1. Nature of the Matter before the Court**

Plaintiff proceeds *pro se* and *in forma pauperis* in this civil rights case. Plaintiff is incarcerated at the El Dorado Correctional Facility in El Dorado, Kansas ("EDCF"). On June 29, 2021, the Court entered a Memorandum and Order to Show Cause (Doc. 4) ("MOSC"), directing Plaintiff to show good cause why his Complaint should not be dismissed or to file an amended complaint to cure the deficiencies set forth in the MOSC. This matter is before the Court for screening Plaintiff's Amended Complaint (Doc. 5). The Court's screening standards are set forth in the MOSC.

Plaintiff claims in his Amended Complaint that staff at EDCF failed to comply with mask policies and other measures put in place to prevent the spread of Covid-19. Plaintiff alleges that grievances were ignored, which put lives in danger.

Plaintiff alleges that on August 16, 2020, he was placed in segregation by Hearing Officer Johnson. Plaintiff alleges that on September 3, 2020, he was transferred to the Emergency Room

1

at Wesley Hospital, where he stayed overnight. During his stay at the hospital, he tested negative for Covid-19. Plaintiff was transported back to EDCF and placed in a quarantine cell by Sgt. Gorman. Plaintiff alleges that the cell was previously occupied by a prisoner who was transferred to the Covid-19 Unit at the Lansing Correctional Facility ("LCF") for testing positive for Covid-19. Plaintiff alleges that he was placed in the cell about 15-30 minutes after the previous occupant was transferred, without the cell being properly sanitized. Plaintiff alleges that he became sick, and after a mass testing it was determined that Plaintiff had contracted Covid-19. Plaintiff was then transferred to another unit at EDCF for a couple of days and then transferred to the Covid-19 Unit at LCF.

Plaintiff claims that on August 17, 2020, Sgt. Randolph claimed to have conducted five disciplinary hearings at the same time, which Plaintiff claims is impossible. Plaintiff claims that Lt. Johnson falsified legal documents stating that Plaintiff had a hearing on this same date at the same time as the other five hearings. Plaintiff claims that Defendants Randolph and Johnson violated his due process and equal protection rights when they falsified disciplinary reports and placed Plaintiff in segregation with any hearings. Plaintiff alleges that placing him in segregation put him at a greater risk of contracting Covid-19. Plaintiff claims that this was done in retaliation and in an attempt to intimidate Plaintiff into dropping a lawsuit against their friend and boss. Plaintiff alleges that Randolph warned Plaintiff to drop the suit.

Plaintiff claims cruel and unusual punishment, deliberate indifference, gross negligence, and due process and equal protection violations. Plaintiff seeks termination of the ICC Contract and to be returned to the jurisdiction of his conviction—Maryland. (Doc. 5, at 12.) Plaintiff also seeks compensatory and punitive damages.

**II.  Discussion**

    **1.  Personal Participation**

The Court found in the MOSC that Plaintiff failed to allege that Defendants Zmuda and Cline personally participated in the violation of his constitutional rights.  Plaintiff continues to name them as defendants in his Amended Complaint.  He alleges that Defendant Zmuda, the Secretary of Corrections at KDOC, is in charge of KDOC and its employees.  Plaintiff claims that Defendant Cline, Warden at EDCF, is in charge of all the employees at EDCF.  Plaintiff claims that Defendants Cline and Zmuda failed to respond to grievances, failed to supervise staff, and that they should have imposed sanctions against staff for violating policies.  Plaintiff fails to state a claim against these defendants for the reasons set out in the MOSC.

Plaintiff's Amended Complaint also names the following additional defendants: (fnu) Gorman, Sergeant at EDCF; Angela Randolph, Sergeant with KDOC; and AJ Johnson, Lieutenant at KDOC.  Plaintiff claims that Defendant Gorman was the tier officer in charge of Unit A1 and was responsible for placing Plaintiff in the quarantine cell.  Plaintiff alleges that Defendants Randolph and Johnson were responsible for placing Plaintiff in segregation.

    **2. Deliberate Indifference**

Plaintiff alleges that Sgt. Gorman was deliberately indifferent to the consequences of not sanitizing an infected cell, which caused Plaintiff to be exposed to Covid-19.  Plaintiff alleges that Defendant Gorman failed to adhere to policy established to stop the spread of the virus.  Plaintiff alleges that Defendants Randolph and Johnson falsified disciplinary documents which placed Plaintiff in segregation where he was at a greater risk of contracting Covid-19.

"Under the Eighth Amendment, prison officials have a duty to 'provide humane conditions of confinement,' including 'tak[ing] reasonable measures to guarantee the safety of . . . inmates.'"

*Requena v. Roberts*, 893 F.3d 1195, 1214 (10th Cir. 2018), *cert. denied*, 139 S. Ct. 800 (2019) (quoting *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (quotation marks omitted)).  To prevail on a failure to protect claim, a plaintiff must show:  "(1) 'that the conditions of his incarceration present an objective substantial risk of serious harm' and (2) 'prison officials had subjective knowledge of the risk of harm,' '[i]n other words, an official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'"  *Requena*, 893 F.3d at 1214 (citation omitted).  Plaintiff has failed to show that any defendant was deliberately indifferent in subjecting him to a greater risk of contracting Covid-19.  Plaintiff has failed to show that defendants disregarded an excessive risk to his health or safety or that they were both aware of facts from which the inference could be drawn that a substantial risk of serious harm existed, and also drew the inference.  Plaintiff's claims suggest, at most, negligence, and are subject to dismissal.

### 3. Disciplinary Hearings

Plaintiff alleges that his disciplinary records were falsified.  Section 1983 is not applicable to "challenges to punishments imposed as a result of prison disciplinary infractions," unless the disciplinary conviction has already been invalidated.  *Cardoso v. Calbone*, 490 F.3d 1194, 1199 (10th Cir. 2007).  The Supreme Court has made clear that "a state prisoner's claim for damages is not cognizable under 42 U.S.C. § 1983 if 'a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence,' unless the prisoner can demonstrate that the conviction or sentence has previously been invalidated."  *Edwards v. Balisok*, 520 U.S. 641, 643 (1997) (quoting *Heck v. Humphrey*, 512 U.S. 477, 487 (1994)).  This rule applies not only when the prisoner challenges his conviction but also when he challenges punishments imposed as a result of prison disciplinary infractions.  *Balisok*, 520 U.S. at 648.

Plaintiff claims he was denied due process and equal protection. Plaintiff has failed to allege how he was denied equal protection. The Due Process Clause protects against "deprivations of life, liberty, or property; and those who seek to invoke its procedural protection must establish that one of these interests is at stake." *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). "A liberty interest may arise from the Constitution itself, by reason of guarantees implicit in the word 'liberty,' . . . or it may arise from an expectation or interest created by state laws or policies." *Id*. (citing *Vitek v. Jones*, 445 U.S. 480, 493–94 (1980) (liberty interest in avoiding involuntary psychiatric treatment and transfer to mental institution); *Wolff v. McDonnell*, 418 U.S. 539, 556–58 (1974) (liberty interest in avoiding withdrawal of state-created system of good-time credits)).

Liberty interests which are protected by the Due Process Clause are "generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force . . . nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995) (internal citations omitted). Plaintiff does not have a constitutional right to a particular security classification or to be housed in a particular yard. *Meachum v. Fano*, 427 U.S. 215, 224 (1976); *Harbin-Bey v. Rutter*, 420 F.3d 571, 577 (6th Cir. 2005) (increase in security classification does not constitute an atypical and significant hardship because "a prisoner has no constitutional right to remain incarcerated in a particular prison or to be held in a specific security classification")).

The Supreme Court has held that "the Constitution itself does not give rise to a liberty interest in avoiding transfer to more adverse conditions of confinement." *Wilkinson*, 545 U.S. at 221–22 (citing *Meachum*, 427 U.S. at 225 (no liberty interest arising from Due Process Clause itself in transfer from low-to maximum-security prison because "[c]onfinement in any of the

State's institutions is within the normal limits or range of custody which the conviction has authorized the State to impose"). "Changing an inmate's prison classification . . . ordinarily does not deprive him of liberty, because he is not entitled to a particular degree of liberty in prison." *Sawyer v. Jefferies*, 315 F. App'x 31, 34 (10th Cir. 2008) (citing *Templeman v. Gunter*, 16 F.3d 367, 369 (10th Cir. 1994) (citing *Meachum*, 427 U.S. at 225)). Plaintiff has not alleged that his assignment imposed any atypical and significant hardship in relation to the ordinary incidents of prison life. *Cf. Wilkinson*, 545 U.S. at 223–24 (finding atypical and significant hardship in assignment to supermax facility where all human contact prohibited, conversation not permitted, lights on 24-hours-a-day, exercise allowed for only one hour per day in small indoor room, indefinite placement with annual review, and disqualification of otherwise eligible inmate for parole consideration).

Plaintiff does not have a constitutional right to dictate where he is housed, whether it is which facility or which classification within a facility. *See Schell v. Evans*, 550 F. App'x 553, 557 (10th Cir. 2013) (citing *Meachum*, 427 U.S. at 228–29; *Cardoso v. Calbone*, 490 F.3d 1194, 1197–98 (10th Cir. 2007). Moreover, jail officials are entitled to great deference in the internal operation and administration of the facility. *See Bell v. Wolfish*, 441 U.S. 520, 547–48 (1979). Plaintiff's claims regarding his placement in segregation are subject to dismissal for failure to state a claim.

**4. Relief Requested**

Plaintiff seeks injunctive relief in the form of a transfer to Maryland. This is an improper request for relief. This Court does not dictate where prisoners are incarcerated. As set forth above, Plaintiff does not have a constitutional right to dictate where he is housed, whether it is which facility or which classification within a facility, and jail officials are entitled to great deference in the internal operation and administration of the facility.

Plaintiff's request for compensatory damages is barred by 42 U.S.C. § 1997e(e), because Plaintiff has failed to allege a physical injury. Section 1997e(e) provides in pertinent part that "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C. § 1997e(e).

Plaintiffs seeks punitive damages, which "are available only for conduct which is 'shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others.'" *Searles*, 251 F.3d at 879 (quoting *Smith v. Wade*, 461 U.S. 30, 56 (1983)). Plaintiff presents no plausible basis for a claim of punitive damages because he alleges no facts whatsoever establishing that any defendant acted with a sufficiently culpable state of mind. Plaintiff's request for punitive damages is subject to dismissal.

### III.  Response Required

Plaintiff is required to show good cause why his Amended Complaint should not be dismissed. Failure to respond by the deadline may result in dismissal of this matter without further notice for failure to state a claim.

**IT IS THEREFORE ORDERED THAT** Plaintiff is granted until **December 6, 2021,** in which to show good cause, in writing, to the Honorable Sam A. Crow, United States District Judge, why Plaintiff's Amended Complaint should not be dismissed for the reasons stated herein.

**IT IS SO ORDERED**.

**Dated November 9, 2021, in Topeka, Kansas.**

> <u>S/ Sam A. Crow</u>
> **SAM A. CROW**
> **SENIOR U. S. DISTRICT JUDGE**